## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | |
|---|---|
| Micah J. Fogle and Tiffany N. Fogle, individually and on behalf of all other similarly situated Plaintiffs, | Case No. 2:25-cv-00830-RMG |
| Plaintiffs, | |
| v. | **ORDER AND OPINION** |
| Beazer Homes, LLC a/k/a Beazer Homes Corp., | |
| Defendant. | |

Before the Court is Defendant's motion to compel arbitration of Plaintiffs' individual claims and stay or dismiss proceedings pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1, et seq., and the South Carolina Uniform Arbitration Act, S.C. Code Ann. § 15-48-10, et seq. (Dkt. No. 5) . For the reasons stated below, the Court grants Defendant's motion.

**Background**

Plaintiffs allege the following. *See* Complaint, (Dkt. No. 1-2). Defendant was the developer, general contractor, and seller of homes at The Oaks, a residential development in Cane Bay, Sommerville, South Carolina. (*Id.* at 2–3). Defendant sold Plaintiffs a home in The Oaks. (*Id.* at 4). Defendant improperly installed the singles in Plaintiffs' roof leading to water intrusion and damage to the residence. (*Id.* at 5). Other homes in The Oaks suffer from similar issues.

In state court, Plaintiffs sued Defendant for (1) Negligence, Gross Negligence, Recklessness, Willfulness, and Wantonness; (2) Breach of Warranty of Workmanlike Services, Breach of Warranty for Fitness for a Particular Purpose, Breach of Warranty of Merchantability

and Serviceability, and Breach of Warranty Against Latent Defects; and (3) Unfair Trade Practices. Plaintiffs intend to represent a class of similarly situated individuals. (*Id.* at 4).

Defendant removed Plaintiffs' complaint to this Court and now move to compel arbitration of Plaintiffs' individual claims and to stay or dismiss these proceedings. (Dkt. Nos. 5, 33). Plaintiffs oppose Defendant's motion. (Dkt. No. 27).

With its motion, Defendant submitted a copy of a Purchase and Sale Agreement ("PSA") and the declaration of John Albright, Defendant's Director of Operations. On July 27, 2016, Plaintiffs signed the PSA with Defendant for the purchase of a new home to be constructed in The Oaks. (Dkt. No. 5-4 at 1). The Plaintiffs' "design selections and sales options were incorporated into the construction of the home." (*Id.*). "The sale of the [Plaintiffs'] residence followed completion of construction and closing on or about January 30, 2017, at which time title was transferred to" Plaintiffs. (*Id.* at 2). To construct Plaintiffs' home, Defendant "sourced materials from out-of-state manufacturers" and employed subcontractors "based outside of South Carolina." (*Id.*).

Addendum D to the PSA contains an arbitration clause. (Dkt. No. 5-2 at 25–26).

**21. SOUTH CAROLINA DISPUTE RESOLUTION AND ARBITRATION; JURY TRIAL WAIVER.**

(a) Except as otherwise provided in Section 21(b), if a dispute, controversy or claim (whether based upon contract, tort, statute, common law or otherwise) (collectively a "**Dispute**") arises from or relates directly or indirectly to the subject matter of this Agreement, and if the Dispute cannot be settled through direct discussions, the parties shall first endeavor to resolve the Dispute by participating in a mediation administered by the American Arbitration Association (the "**AAA**") under its Commercial Mediation Rules before resorting to arbitration. Thereafter, except as provided in Section 21(b), any unresolved Dispute shall be submitted to and settled by binding arbitration pursuant to the South Carolina Uniform Arbitration Act (SC Code Sec. 15-48-10 et seq.) (the "Act"). The proceeding shall be conducted pursuant to the Commercial Arbitration Rules of the AAA. In the event of a conflict between the Act and the AAA rules, the Act shall control. The arbitration

proceedings shall be conducted in the County in which the Home is located, or a mutually agreed upon location, on an expedited basis before a neutral arbitrator who is a member of the bar of the state of where the Home is located, and has been actively engaged in the practice of law for at least fifteen (15) years, specializing in transactions with substantial experience in the subject matter of this Agreement. Any attorney who serves as an arbitrator shall be compensated at a rate equal to his or her current regular hourly billing rate unless the arbitrator agrees otherwise. Upon the request of either party, the arbitrator's award shall include findings of fact and conclusions of law provided that such findings may be in summary form. Unless otherwise deemed appropriate by the arbitrator(s), the prevailing party shall be entitled to an award of all reasonable out-of-pocket costs and expenses (including attorney's and arbitrator's fees) related to the entire arbitration proceedings (including review, if applicable). The arbitration shall be binding and final, and either party shall have the right to seek judicial enforcement of the arbitration award.

(b) Despite anything to the contrary contained in Section 21(a), the parties acknowledge and agree that any Dispute arising out of or relating to (i) the Limited Warranty (as defined in this Agreement), and/or (ii) any construction defect covered by the Limited Warranty (collectively, "**Limited Warranty Disputes**") shall be resolved in accordance with the dispute resolution procedures set forth in the Limited Warranty, and the provisions of Section 21(a) shall not and are not intended to apply to such Limited Warranty Disputes.[]

**(c) BY SIGNING BELOW, BUYER ACKNOWLEDGES THAT BUYER HAS READ AND UNDERSTANDS THE FOREGOING PROVISIONS OF THIS SECTION 21. EXCEPT AS OTHERWISE PROVIDED, BUYER AGREES TO HAVE ANY DISPUTE DECIDED BY BINDING ARBITRATION IN ACCORDANCE WITH THE TERMS OF THIS SECTION 21, AND BUYER KNOWINGLY AND VOLUNTARILY WAIVES AND RELINQUISHES ANY RIGHTS BUYER MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED AND RESOLVED IN A COURT OR BY A JURY TRIAL. IN ADDITION, BUYER KNOWINGLY AND VOLUNTARILY WAIVES AND RELINQUISHES ANY RIGHT TO RECORD ANY LIS PENDENS OR OTHER SIMILAR LIEN OR ENCUMBRANCE AGAINST THE HOME OR ANY OTHER PROPERTY OF THE SELLER.**

(*Id.* at 25).

The Limited Warranty mentioned above is a separate part of the contract and is "an agreed method for determining when a **CONSTRUCTION DEFECT** exists and a clear understanding of [Defendant's] responsibilities for remedying any such **CONSTRUCTION DEFECT**." (Dkt.

No. 5-3 at 62). Put differently, the Limited Warranty is a specific mechanism by which Plaintiffs may demand that Defendant repair "Construction Defects" at Defendant's expense. Where the parties cannot resolve claims or disputes by "mutual agreement," the claims and disputes are resolved by "binding arbitration." (*Id.*). "Coverage under the **LIMITED WARRANTY** is expressly limited to **CONSTRUCTION DEFECTS** which occur <u>during</u> the **WARRANTY PERIOD** . . . ." (*Id.*) (underlining added). The Warranty Period expired on January 30, 2018. (Dkt. No. 5-4 at 2).

Defendant's motion is ripe for disposition.

### Legal Standard

A litigant may compel arbitration under the FAA if it can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991). Once a litigant moves to compel arbitration under the FAA, the district court determines whether a matter should be resolved through arbitration depending on (1) whether a valid arbitration agreement exist and (2) whether the dispute falls within the substantive scope of the arbitration agreement. *AT&T Tech. Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986). The Supreme Court has consistently encouraged a "healthy regard for the federal policy favoring arbitration." *Levin v. Alms and Associates, Inc.*, 634 F.3d 260, 266 (4th Cir. 2011).

"Even though arbitration has a favored place, there still must be an underlying agreement between the parties to arbitrate." *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997). Section 4 of the FAA requires the district court to "decide whether the parties have formed an agreement to

arbitrate." *Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 234 n.9 (2019). The question

of whether an arbitration agreement has been formed is one of contract law, and ordinary state law

principles apply. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). When a party

"unequivocally denies 'that an arbitration agreement exists,' " that party bears the burden of

coming forward with "sufficient facts" to support her position. *Berkeley Cnty. Sch. Dist.*, 944 F.3d

at 234. The standard to decide whether the party has presented "sufficient facts" is "akin to the

burden on summary judgment," and the court may consider matters outside the pleadings. *Chorley*

*Enters., Inc. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 564 (4th Cir. 2015). The trial

provision of Section 4 is invoked only where "the record reveals a genuine dispute of material fact

'regarding the existence of an agreement to arbitrate.' " *Berkley Cnty. Sch. Dist.*, 944 F.3d at 234.

Where there is no genuine dispute of material fact an agreement exists, the court will compel

arbitration.

Also relevant is the question of "arbitrability." Whether an underlying controversy will

proceed to arbitration on the merits "necessarily falls within the narrow circumstances of arbitrable

issues for the court to decide." *Del Webb Communities, Inc. v. Carlson*, 817 F.3d 867, 874 (4th

Cir. 2016). Namely, "it is well established that whether the parties have submitted a particular

dispute to arbitration is 'undeniably an issue for judicial determination[ ] [u]nless the parties

clearly and unmistakably provide otherwise.' " *Id.* (quoting *AT&T Techs., Inc. v. Commc'ns*

*Workers of Am.*, 475 U.S. 643, 649 (1986)). Here, the PSA does not clearly and unmistakably

delegate the question of arbitrability to the arbitrator. (Dkt. No. 5-2 at 25).[1] Accordingly, the Court

decides this question.

---

[1] Defendant cogently makes this point in its briefing. (Dkt. No. 5-1 at 5–7). Plaintiffs, for their
part, do not rebut this argument, and have conceded it. *See generally* (Dkt. No. 27).

**Discussion**

For the reasons explained herein, Plaintiffs' individual claims are subject to binding arbitration under the PSA.

*The PSA Controls*

As noted above, a litigant may compel arbitration under the FAA if it can demonstrate "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Whiteside*, 940 F.2d at 102.  Factors 1 and 4 are established. The Court thus turns to factor 2, whether a written agreement includes an arbitration provision that covers the dispute.

The PSA is the applicable agreement.  Plaintiffs strenuously argue that Limited Warranty controls.  *See* (Dkt. No. 27 at 5–7).  But that's not true.  "*Coverage* under th[e] **LIMITED WARRANTY** is expressly limited to **CONSTRUCTION DEFECTS** which occur *during* the **WARRANTY PERIOD.**" (Dkt. No. 5-3 at 63) (all italics added).  Plaintiffs' claim arose *after* the Warranty Period ended.  Thus, there is no "coverage" for Plaintiffs' claims under the Limited Warranty.  So, the Limited Warranty has no relevance here.  The PSA does.

The PSA's Addendum D § 21(a) states that "if a dispute, controversy or claim (whether based upon contract, tort, statute, common law or otherwise) . . . arises from or relates directly or indirectly to the subject matter of this Agreement," the dispute is resolved via arbitration, "[e]xcept as provided in Section 21(b)."  (Dkt. No 5-2 at 25).  Section 21(b) states that despite "anything to the contrary contained in Section 21(a)," disputes "*arising out of or relating* to (i) the Limited Warranty . . . and/or (ii) any construction defect *covered* by the Limited Warranty . . . shall be

resolved in accordance with the dispute resolution procedures set forth in the Limited Warranty." (*Id.*) (emphasis added).

The claims in Plaintiffs' complaint (faulty installation of shingles) arise from the PSA's "subject matter"—the sale and construction of Plaintiffs' home. Therefore, the PSA's arbitration clause governs. By contrast, Plaintiffs' claims *can't* arise from, relate to, or be covered by the Limited Warranty—the PSA expired years before Plaintiffs sued. *See* (Dkt. No. 5-3 at 63) (coverage under the Limited Warranty restricted to Construction Defects which "occur during" the Warranty Period). In sum, the PSA is the relevant document and governs Plaintiffs' claims.

*Plaintiffs Must Arbitrate Their Claims on a Bilateral Basis*

Defendant asks the Court to hold that Plaintiffs must arbitrate their claims on a bilateral basis only. By contrast, Plaintiffs claim that the PSA permits class arbitration because it is "silen[t]" on the question. (Dkt. No. 27 at 19).

In *Del Webb*, the Fourth Circuit held that " 'unless the parties clearly and unmistakably provide otherwise,' whether an arbitration agreement permits class arbitration is a question of arbitrability for the court." *Del Webb*, 817 F.3d at 876 (quoting *Reed Elsevier, Inc. ex rel. LexisNexis Div. v. Crockett*, 734 F.3d 594, 597–99 (6th Cir. 2013)). So, this Court determines whether the PSA permits class arbitration.

The Supreme Court has held that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so." *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010).

> An implicit agreement to authorize class-action arbitration ... is not a term that the arbitrator may infer solely from the fact of the parties' agreement to arbitrate. That is so because class-action arbitration changes the nature of arbitration to such a degree that it cannot be presumed the parties consented to it by simply agreeing to submit their disputes to an arbitrator.

*Id.* at 685; *see Del-Webb*, 817 F.3d at 875–76 (explaining in detail the differences between bilateral and class arbitration).

The Court holds that the PSA does not permit class arbitration. The PSA's arbitration provision does not mention class arbitration. Rather, it focuses on "the subject matter of *this* Agreement." (Dkt. No. 5-2 at 25) (emphasis added). And the PSA's subject matter is not Defendant's obligation to *other* homebuyers. It's Defendant's obligations to *Plaintiffs* to build and sell them a home. *See Del Webb Communities, Inc. v. Carlson*, No. 9:14-CV-1877-PMD, 2017 WL 1050139, at *2 (D.S.C. Feb. 1, 2017), *aff'd*, 698 F. App'x 761 (4th Cir. 2017) (holding home purchase agreement did not permit class arbitration for similar reasons).

Accordingly, the Court finds that Plaintiffs may only arbitrate their claims on a bilateral basis.

### The PSA Involves Interstate Commerce

Turning to *Whiteside*'s factor 3, the Court must determine if the PSA involves interstate commerce.

 The PSA concerned building Plaintiffs a new home and incorporated Plaintiffs' personal design specifications. *See* (Dkt. No. 5-2 at 2, 19–21). Defendant sourced materials for Plaintiffs' future home from "out of state manufacturers." (Dkt. No. 5-4 at 2). Further, "various subcontractors that worked on the construction were based outside of South Carolina." (*Id.*).

Notwithstanding Plaintiffs' counterfactual argument to the contrary, (Dkt. No. 27 at 15) ("[T]he transaction is fundamentally local."), building Plaintiffs' new residence implicated interstate commerce. *See Bradley v. Brentwood Homes, Inc.*, 730 S.E.2d 312, 318 (S.C. 2012) (finding sale and purchase of real estate to be intrastate in nature—and not subject to FAA—where

party "agreed to purchase a completed dwelling rather than contract for the construction of a dwelling"); *see also Rota-McLarty v. Santander Consumer USA, Inc.*, 700 F.3d 690, 697 (4th Cir. 2012) (noting the FAA's reach is "broad" and that it "requires only that the transaction in fact involve[] interstate commerce"). Accordingly, the PSA involves interstate commerce.

*The PSA Is Not Unconscionable*

Plaintiffs also contend that the PSA's arbitration provision is unconscionable and that the Court therefore cannot compel arbitration. (Dkt. No. 27 at 16). Not so.

The FAA provides that a party "may seek revocation of a contract under 'such grounds as exist at law or in equity,' including fraud, duress, and unconscionability." *Sydnor v. Conseco Fin. Servicing Corp.,* 252 F.3d 302, 305 (4th Cir. 2001) (quoting 9 U.S.C. § 2). Unconscionability is a narrow doctrine whereby the challenged contract must be one which no reasonable person would enter into, and the " 'inequality must be so gross as to shock the conscience.' " *L & E Corp. v. Days Inns of America, Inc.,* 992 F.2d 55, 59 (4th Cir. 1993) (quoting *Smith Bros.–McCleary– McClellan Co. v. Beresford,* 128 Va. 137, 104 S.E. 371, 382 (1920) (internal quotations omitted))

In South Carolina, "[u]nconscionability has been recognized as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.*, 361 S.C. 544, 554, 606 S.E.2d 752, 757 (2004). "Absence of meaningful choice on the part of one party generally speaks to the fundamental fairness of the bargaining process in the contract at issue." *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 25, 644 S.E.2d 663, 669 (2007) (citing *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 295 (4th Cir. 1989)). "Traditionally, a finding of unconscionability 'requires a showing of both substantive unconscionability, or unfairness in the contract itself, and procedural

unconscionability, or unfairness in the bargaining process.' " *Hosey v. Quicken Loans, Inc.,* No. 1:17-cv-02060, 2018 WL 1471891 (D.S.C. Mar. 26, 2018) (quoting *McFarland v. Wells Fargo Bank, N.A.,* 810 F.3d 273, 277 (4th Cir. 2016)).

Plaintiffs argue that the PSA's arbitration provision is unconscionable because (1) there was a disparity of bargaining power between themselves and Defendant; (2) requiring Plaintiffs to arbitrate their claims against Defendant would require Plaintiff to initiate separate litigation against subcontractors; and (3) the PSA's "class waiver" "deprives Plaintiffs of a meaningful remedy." (Dkt. No. 27 at 16-17).

The Court finds that the PSA's arbitration provision is not unconscionable. Plaintiffs present no case law to support their arguments—which, if true on the facts here, would seemingly render unconscionable a large part of, if not most, similar arbitration provisions. Plaintiffs dislike the PSA's arbitration provision. But the PSA's arbitration clause is even-handed and does not afford Defendants more favorable rights than Plaintiffs. As South Carolina courts have stated, "to constitute unconscionability, the contract terms must be so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Mart v. Great S. Homes, Inc.*, 441 S.C. 304, 318, 893 S.E.2d 360, 367 (Ct. App. 2023) (citing *Damico v. Lennar Carolines, LLC*, 437 S.C. 596, 612 (2022)); *Damico*, 437 S.C. at 615–17 ("The distinction between a contract of adhesion and unconscionability is worth emphasizing: *adhesive contracts are not unconscionable in and of themselves **so long as the terms are even-handed**.*"). The PSA's arbitration provision is not unconscionable.

*Defendants Did Not Waive Their Right to Arbitration*

Plaintiffs argue in the alternative that even if the PSA requires arbitration of their claims, the Court should decline to compel arbitration because Defendant failed to comply with the PSA's requirement that the parties first submit disputes to meditation. (Dkt. No. 27 at 18–19).

But it was *Plaintiffs* that violated the PSA's arbitration provision in the first place by suing in state court. By contrast, Defendant has done nothing to waive its right to arbitrate Plaintiffs' claims. Nor have Plaintiffs shown that Defendants actions (removing this action and quickly moving to compel arbitration) have prejudiced Plaintiffs. Plaintiffs' argument is a nonstarter. *See Oyekan v. Educ. Corp. of Am.*, No. 4:18-CV-01785-RBH, 2019 WL 978865, at *5 (D.S.C. Feb. 28, 2019) ("The Fourth Circuit has determined that a party may waive its right to compel arbitration if the party 'so substantially utilizes the litigation machinery that to subsequently permit arbitration' would prejudice the other party.") (quoting *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 250 (4th Cir. 2001)).

## Conclusion

For the reasons stated above, the Court **GRANTS** Defendant's motion to compel arbitration (Dkt. No. 5) and **DISMISSES** this action in favor of arbitration.[2]

       s/ Richard Mark Gergel_____
Richard Mark Gergel
United States District Judge

August 21, 2025
Charleston, South Carolina

---

[2] Also pending is Plaintiffs' motion for discovery (Dkt. No. 10). Given the Court's denial of Plaintiffs' motion for remand, (Dkt. No. 24), the denial of Plaintiffs' motion for reconsideration of the same, (Dkt. No. 35), and the instant ruling, the Court **DENIES** the motion for discovery.